```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------x

DIANE GREIF,

                    Plaintiff,              MEMORANDUM & ORDER
                                              20-CV-3159(EK)
          -against-

KIOLO KIJAKAZI, ACTING COMMISSIONER
OF SOCIAL SECURITY,

                    Defendant.

---------------------------------------x
```

ERIC KOMITEE, United States District Judge:

        Plaintiff Diane Greif seeks judicial review of the Commissioner of the Social Security Administration's denial of her claims for disability benefits. Before the Court are the parties' cross-motions for judgment on the pleadings. For the following reasons, this case is remanded to the Social Security Administration for further development of the record and consideration of the onset date, to apply the appropriate legal standards in evaluating a treating physician's opinion, and such other matters as may become relevant, in a manner consistent with this opinion.

                                                   **I.   Background**

**A. Factual Background**

        Plaintiff alleges that she has wrestled for decades with mental health challenges — including, most prominently, obsessive-compulsive disorder — that have severely affected her

job prospects. Prior to her alleged disability, Greif accomplished a great deal academically and professionally, graduating from a top law school and practicing at a large law firm.

Greif testified before the SSA that despite this promising start, her mental health issues eventually caused her career to unravel. She lost four different jobs by 1990; thereafter she became fully reliant on her parents for financial support. Her symptoms, she alleges, persist. At its most extreme, Greif's condition causes her to undergo hours-long cleansing rituals in order to do basic everyday tasks.

Greif applied for disability insurance benefits on January 3, 2017, alleging disability for a much earlier period: from December 30, 1990 through December 31, 1994, the date on which she was last insured. *See* Administrative Transcript ("Tr.") 176, 200, 275, ECF No. 10. The claim was initially denied. After requesting a hearing, Greif appeared before an administrative law judge on February 15, 2019. The ALJ later issued a decision concluding that Greif was not disabled and therefore not entitled to disability benefits. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final. This appeal followed.

**B. The ALJ Decision**

An ALJ must follow a five-step inquiry for evaluating disability claims. First, the ALJ determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that significantly limits the applicant's ability to perform basic work activities. *Id.* § 404.1520(c). If the ALJ identifies a severe impairment, he or she must determine if it meets or equals one of the impairments listed in Appendix 1 of the regulations (the "Listed Impairments"). *Id.* § 404.1520(d); 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, the ALJ will deem the applicant disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period of alleged disability. Tr. 13. The ALJ then held that Greif had established no severe impairments during the period of alleged disability. This finding was predicated primarily on the absence of contemporaneous medical records: the ALJ wrote that the record contained "no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." *Id.* While sympathetic to Plaintiff's situation, the ALJ declined to award benefits on the basis of Plaintiff's

3

own subjective testimony and retrospective medical opinions issued decades after the period at issue. Tr. 14-15.

## II. Standard of Review

A federal district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits. 42 U.S.C. § 405(g). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotations omitted). "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

## III. Discussion

Greif challenges the ALJ's decision on a number of grounds. First, she argues that the ALJ failed to give sufficient weight to her testimony and the medical opinions and diagnoses of her treating physicians and, in turn, gave too much weight to the opinions of the SSA's medical expert and consultative examiner. The failure to appropriately weigh that

4

evidence, Greif argues, led to the ALJ's erroneous determination that she was not disabled during the relevant period.  Greif also contends that the ALJ neglected his duty to develop the record.

As is apparent, the central challenge here is that Greif is seeking disability benefits for a period that predates the filing of her claim by twenty-three years.  She does not have medical records from her treatment during that period, and her own recollection is imperfect.

**A. Treating Physicians' Opinions**

Greif argues that the ALJ improperly discounted her treating physicians' opinions.  The Commissioner disputes that contention, maintaining that the ALJ properly afforded little weight to those opinions because they were made many years after the relevant period, were not consistent with other evidence in the record, and were not based on objective evaluations from the relevant period.

Two treating physicians opined that Plaintiff suffered from OCD from 1990 to 1994, but neither had treated Plaintiff prior to 2016.  In October 2016, Dr. Ruth Shim, who had then been treating Greif for six months, concluded that she has "one of the most severe cases of obsessive-compulsive disorder I have ever encountered," cannot "engag[e] in any sort of work or activities," and has "had her current symptoms for most of her

5

adult life." Tr. 350-51. In 2019, Dr. Sean Bell-Thomson, another treating physician, wrote that Greif had longstanding conditions that "prevented her from doing" a full day's worth of work prior to December 1994. Tr. 996. Both treating doctors observed that Greif suffered from her conditions before December 1994. Tr. 351, 996. They based these opinions on their own expertise and treatment of Greif, including the taking of a thorough clinical history, reviewing her past treatment to the extent possible, and detailed clinical interviews. Tr. 351-52; 996-97.

The ALJ gave "little weight" to the retrospective diagnoses of Drs. Shim and Bell-Thompson because they "were based on undocumented evidence" and "were unsupported by objective mental status examination or psychiatric or psychological evaluations during the" 1990-1994 period. Tr. 15. While the ALJ recognized "the long-standing treating relationship between the claimant and Drs. Shim and Bell-Thompson," his decision does not show him grappling with their status as treating physicians. *Id*. By contrast, the ALJ assigned "great weight" to the opinions of the medical export, Dr. Bennett, and the medical consultant, Dr. Lieber-Diaz, even though they had no treating relationship with Greif. Tr. 14-15.

The "treating physician rule" applies to Greif's case because the ALJ rendered his decision before its repeal. SSA

6

regulations then in effect mandated "specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion." *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). The ALJ had to first determine whether an opinion is entitled to controlling weight, as "the opinion of a claimant's treating physician as to the nature and severity of impairment" was to be given "controlling weight" so long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotations omitted).[1]

If the ALJ decided that a treating physician's view was not entitled to controlling weight, the ALJ had to determine how much weight, if any, to give it. *Estrella*, 925 F.3d at 95. In doing so, the ALJ was to "explicitly consider" the "*Burgess* factors*," which include the frequency, length, nature, and extent of treatment; the amount of medical evidence supporting the opinion; the consistency of the opinion with the remaining medical evidence; and whether the physician is a specialist. *Estrella*, 925 F.3d at 95-96 (internal quotations omitted); *see*

---

[1] The regulation that contained the treating physician rule was repealed on January 18, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017)); 20 C.F.R. §§ 404.1520c(c), 416.920c(c) (effective March 27, 2017).

7

also *Burgess*, 437 F.3d at 129. "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight at step two is a procedural error." *Estrella*, 925 F.3d at 96 (quoting *Selian v. Astrue*, 708 F.3d 409, 419-20 (2d Cir. 2013). But if a searching review of the record assures the court "that the substance of the treating physician rule was not traversed," the error is harmless. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

These requirements apply to treating physicians' retrospective opinions as well as contemporaneous ones. *See Maloney v. Berryhill,* 16-CV-3899, 2018 WL 400772, at *5 (E.D.N.Y. Jan. 12, 2018); *see also Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981). The fact that Greif's treating physicians did not treat her during the relevant period "does not mean that the opinion should not be given some, or even significant weight." *See Monette v. Astrue*, 269 Fed Appx. 109, 113 (2d Cir. 2008); *see also Maloney*, 2018 WL 400772, at *5 (quoting *Rivera v. Sullivan*, 923 F.2d 964, 968 (2d Cir. 1991) ("In fact, courts have found that such retrospective opinions should be given controlling weight where 'no medical opinion in evidence contradict[s] [a] doctor's retrospective diagnosis finding a disability.'")).

The ALJ here appears to have concluded that the absence of contemporaneous records *compelled* him to dismiss the

8

treating physicians' opinions.  Tr. 15 (concluding that "there can be no medically determinable mental impairment in the absence of objective medical abnormalities between December 1990 to December 1994").  He acknowledged the treating physicians' "long-standing treating relationship" with Greif but concluded that their "opinions were unsupported by objective mental status examination or psychiatric or psychological evaluations during this period."  *Id.*; *see also id.* at 14 (noting that "an extensive search of the record revealed little psychiatric or medical evidence during the adjudicative period").

The circumstances of this case are at least somewhat uncommon in that the severe mental impairments alleged could actually explain (in whole or in part) the claimant's failure to seek immediate treatment.  In addition, the record revealed other (non-medical) evidence that corroborated the treating physicians' retrospective diagnoses, as discussed below.  In these particular circumstances, it was error to dismiss the treating physicians' opinions solely on the basis that they were unsupported by contemporaneous complaints or medical records.

"It is axiomatic that a treating psychiatrist must consider a patient's subjective complaints in order to diagnose a mental disorder."  *Santana v. Astrue*, 2013 WL 1232461, at *14 (E.D.N.Y. Mar. 26, 2013).  Consideration of a "'patient's report of complaints, or history, [a]s an essential diagnostic tool,'

9

is a medically acceptable clinical and laboratory diagnostic technique," and is "especially true for diagnoses of mental disorders." *Id*. (quoting *Hernandez v. Astrue*, 814 F. Supp. 2d 168, 182 (E.D.N.Y. 2011)).  The treating physicians took these complaints and this history (as related by Plaintiff) into account; the ALJ did not.  This error requires remand.[2]

**B. ALJ's Duty to Develop the Record**

Greif also argues that remand for further development of the record is appropriate.  Among other things, the record reveals that pharmacy records might exist for some years before the 1990-1994 period.[3]  In addition, Plaintiff's immediate family members might be in a position to provide additional first-hand recollection regarding the period in question.  The Commissioner argues, on the contrary, that the ALJ was under no obligation to develop the record further because "the evidence already present" was "adequate for the ALJ to make a determination as to disability."  *See* Def.'s Reply Mem. in Support of Mot. for J. On Pleadings at 14, ECF No. 23 (citing *Janes v. Berryhill*, 710 F. App'x. 33, 34 (2d Cir. 2018)).

---

[2] Because I order remand, I need not consider Greif's additional arguments that the ALJ improperly discounted her testimony and afforded too much weight to the views of the medical expert and consultative examiner.

[3] See Pl.'s Mem. in Support of Mot. for J. on Pleadings at 29-30, ECF No. 21; R. 31 ("Yes, I did see the psychiatrist [after losing her last law firm job in 1989].  I was also put on psychiatric medicine, something called Pamelor.").

10

Given how heavily the ALJ relied on the absence of contemporaneous evidence, and the possibility that at least some additional such evidence exists, further development of the record is warranted here. *See Sherman v. Berryhill*, 16-CV-9303, 2018 WL 1399210, at *10 (S.D.N.Y. Mar. 20, 2018); *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.3d 751, 755 (2d Cir. 1982)). "Where there are gaps in the administrative record" remand to the Commissioner "for further development of the evidence" is appropriate. *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999) (cleaned up). The need for additional record development is heightened here, too, in light of the discussion above concerning Plaintiff's treating physicians. An ALJ "cannot reject the treating physician's diagnosis without first attempting to fill *any clear gaps* in the administrative record." *Rosa*, 168 F.3d at 79 (emphasis added).

The ALJ did, to be sure, seek to supplement the record in some respects. Greif reported being treated in 1990 and 1991 by psychologist Dr. Steven Fayer and therapist Gerald Garsh. Fayer replied to the Commissioner's medical records request, noting "I have no patient with this name." *See* Tr. 362. Garsh spoke with Greif's counsel and did not fill out a request for information because he could not remember the details of her case and there were no treatment records. *See* Tr. 276. Still, further development of the record — especially from Plaintiff's

11

family members and pharmacies — remained possible and, under the unusual circumstances presented here, appropriate.

This conclusion receives some persuasive support from the Social Security Administration's internal guidance. The SSA has issued substantial guidance regarding how ALJs should go about determining the onset date for established impairments that are otherwise "severe." These Social Security Rulings lack the force of law. *See Straughter v. Commissioner of Social Security*, 12-CV-825, 2015 WL 6115648, at *21 (S.D.N.Y. October 16, 2015). Nevertheless, they are binding on all components of the SSA. *Heckler v. Edwards*, 564 U.S. 870, 873 n. 3 (1984); *see Capitano v. Secretary of Health & Human Servs.*, 83-CV-6231, 1984 WL 63640, at *1 (2d Cir. Aug. 17, 1984). While I am not bound by the guidance, it provides useful suggestions for this precise fact pattern — suggestions the ALJ appears to have sidestepped, by and large, in his analysis.

The relevant guidance was initially published in Social Security Ruling 83-20 ("Onset of Disability"). *See generally* SSR 83-20, 1983 WL 31249 (S.S.A. 1983). That ruling was rescinded on October 2, 2018 and replaced by Social Security Regulation 18-1p. 83 Fed. Reg. 191, 49613 (October 2, 2018); *see* SSR 18-1p, 2018 WL 4945639 (S.S.A. 2018). The former guidance was more generous to claimants. The ruling provided that when "adequate medical records are not available" because

12

"the alleged onset and last date worked are far in the past," the ALJ should "infer the onset date from the medical *and other* evidence that describe the history and symptomatology of the disease process."  SSR 83-20, at *2 (emphasis added).  If "medical evidence is not available," the ruling directed the ALJ to obtain evidence "from family members, friends, and former employers . . . regarding the course of the individual's condition."  *Id.* at *3.

The new ruling does not run as strongly in the claimant's favor.  It still provides, however, that where "there is information in the claim(s) file that suggests that additional medical evidence relevant to the period at issue is available," the SSA "*will assist* with developing the record and may request existing evidence directly from a medical source or entity that maintains the evidence."  SSR 18-1p at *6 (emphasis added).  It further provides that SSA "may consider evidence from other nonmedical sources such as the claimant's family, friends, or former employers, if [SSA] cannot obtain additional medical evidence or it does not exist (e.g., the evidence was never created or was destroyed), and [SSA] cannot reasonably infer the date that the claimant first met the statutory definition of disability based on the medical evidence in the file."  *Id*.

13

In considering how to develop the record on remand — a subject on which I deliver no specific pronouncement — the ALJ may want to take cues from the agency's internal guidance. To start, Greif testified at the hearing that she was fired from four different legal jobs leading up to the 1990-1994 period as a result of her conditions, *see* Tr. 32-35; the ALJ may seek to request information from those employers. It appears clear, as well, from Greif's testimony that her parents — specifically her mother — played a significant role in her life from 1990 through 1994, including by interacting with one or more hospitals on Plaintiff's behalf. *See* Tr. 30-32, 41-42. Thus her mother's testimony may be illuminating. Finally, before discounting the treating physicians' views on remand, the ALJ may want to request further information from them. For example, they may attest more specifically to the likelihood that OCD as severe as the Plaintiff currently suffers is more or less likely to appear during a given age range. Finally, the ALJ may seek to request pharmacy records that Greif alluded to for the period 1990-1994.

I do not mean to suggest that any one of these steps is specifically required, or that the ALJ needs to conduct a forensic accounting of a claimant's entire medical and work history. But in this case, the gaps in the record were sufficiently clear that some meaningful additional development is required.

In some cases, it can be difficult to reconcile the ALJ's duty to develop the record with the axiom that the burden of proof rests with the claimant throughout steps one through four. *See* 20 C.F.R. § 404.1512(a) (claimant must "inform [SSA] about or submit all evidence known to [claimant] that relates to whether or not [claimant is] blind or disabled . . . . This duty is ongoing."); *see also Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (explaining the burden of proof on a claimant); *compare with Rosa*, 168 F.3d at 79 (explaining that "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history").

This is not one of those difficult cases, though, because the record had, in addition to clear gaps, indications that probative documents and information might exist to fill those gaps, thereby triggering the ALJ's obligation to develop the record. *See Rosa*, 168 F.3d at 79. Accordingly, I vacate the Commissioner's decision and remand for further development of the record and other actions consistent with this analysis.

## IV. Conclusion

For the reasons stated above, the Commissioner's motion for judgment on the pleadings is denied and Plaintiff's motion is granted.  This case is remanded for further proceedings consistent with this opinion.


SO ORDERED.

                                          __/s/ Eric Komitee_____
                                          ERIC KOMITEE
                                          United States District Judge

Dated:     January 31, 2022
            Brooklyn, New York